State v. Hall.

THE STATE *ex rel.* W. C. KAIN *v.* E. T. HALL.'

1. JURISDICTION OF THE SUPREME COURT. *To award original process.* The power of this court to award original process is limited to those cases where its exertion is required to carry out its appellate jurisdiction.

   Cases cited: King *v.* Hampton, 3 Hay., 59; Cox *v.* Breedlove, 2 Yer.; 499; Waters *v.* Lewis, 9 Yer., 15; Miller *v.* Conlee, 5 Sneed, 434; State *v.* Bank of E. Tenn., 5 Sneed, 573; 1 Thomp. Cases, 61; Ward *v.* Thomas, 2 Col., 565; State *v.* Hall, 3 Col., 255; State *v.* Elmore, 6 Col., 528.

2. SAME. *Mandamus to inferior court. When disallowed.* A mandamus to compel an inferior judge to proceed to the trial of a cause disallowed, because, if granted, such action would involve the exercise of original jurisdiction.

3. INTERNATIONAL LAW. *Appointments of conquering power good.* In times of civil war, the conquering power has the right, under the laws of war, to dispossess the legally constituted officers in the conquered territory and appoint others in their stead, whose acts, within the sphere of their authority, are valid and binding.

   Case cited: Wart *v.* Thompson, MS., Jackson, 1872.

   Acts cited: 1815, ch. 38, secs. 3, 4.

   Constitution cited: 1870, art. 6, sec. 2.

---

FROM KNOX.

---

From the Circuit Court at Knoxville. E. T. HALL, Judge.

. No record can be found.

SNEED, J., delivered the opinion of the court.

A state of facts is presented in the record which though they might appeal very powerfully for relief to a court of equity in an appropriate form of proceed-

ing, yet, after a very careful consideration, we have arrived at the conclusion that the specific relief demanded in this case cannot be accorded, and such is the unanimous judgment of the court.

The facts necessary to be considered are, that the relator appeared in the Circuit Court of Knox County on the 22d of February, 1873, and moved that he be permitted to take steps for the revivor of a certain action of ejectment, in which James Ross, now dead, was plaintiff, and the relator defendant, alleged to be pending in said court, to the end that said cause might be brought to trial. The motion was based upon the affidavit of the relator, embodying the following statement of facts: The plaintiff in said action of ejectment claimed the premises under an execution sale founded upon a certain judgment by motion against the relator, the plaintiff in ejectment having redeemed under said sale as a creditor of the relator. The judgment under which said sale and redemption were had, was brought by the relator before this court by writ of error, no *supersedeas* having been obtained, and, pending said writ of error in this court, the execution under said judgment was levied upon the premises in question, and the sale and redemption as aforesaid followed, the plaintiff redeeming from the purchaser at said sale. The case coming on for hearing before this court under a writ of error upon the validity of said judgment by motion, the said judgment was reversed by this court and the motion against the relator discharged. The record of this court showing its action upon the judgment, is exhibited with the affi-

davit.   It is stated in the affidavit that said action of ejectment was instituted about the — day of ——, 1860, and that the same was upon the docket of said Circuit Court on the 10th of October, 1864, when the defendant Hall, under the authority of an alleged commission from Andrew Johnson, then military governor of Tennessee, opened and organized what was called a Circuit Court for said County of Knox, and held the October term thereof, and tried this action of ejectment and no other case; that at the time of said trial the relator was absent and was unrepresented by counsel; that the late civil war was flagrant and the country held by Federal troops; and that, under these circumstances, a judgment in said ejectment was rendered against him, and he lost the possession of his home.   The alleged judgment is exhibited, and it assumes the presence of the plaintiff only and the jury, but does not show the presence of the relator, by himself or counsel, or account for his absence by default or otherwise.   The relator avers that said action of defendant was an unauthorized usurpation of judicial power and functions; that the same was a nullity; that the defendant was not at the time either *de jure* or *de facto* a judge of the Circuit Court of Tennessee; that George Brown was then the lawful judge of said court, under full commission, elected and qualified under the Constitution and laws of Tennessee; that the said George Brown was then residing in said circuit; that his lawful term of office had not expired, and that he had in no manner vacated his said office.   That the act of the said defendant was

therefore a nullity, and that he, the relator, had a
right to demand the trial of said cause, as the same
had never been tried and was still pending; and that
he, the relator, had discovered the entry of said judg-
ment on the 10th of October, 1872, recently before
his said application was made. The defendant, the
Hon. E. T. Hall, being upon the bench under regu-
lar commission as the judge of said court at the time
of the relator's said motion, disallowed and dismissed
the same upon the ground that a trial of said action
of ejectment was had on the said 10th of October,
1864, and a final judgment rendered in favor of the
plaintiff, from which no appeal was taken or other
proceeding had to review or reverse said judgment.
The relator appealed in error from said judgment, and
now, in this court, he demands a writ of *mandamus*
to compel Judge Hall to proceed to the trial of the
cause.

Under the Constitution of this State, this court is
declared to be a court of appellate jurisdiction only,
under such restrictions and regulations as may be pre-
scribed by law: Const. 1876, art. 6, sec. 2.    But it
may possess such other jurisdiction as now conferred
by law upon the Supreme Court under the Constitu-
tion of 1834: *Id.* And the latter in turn was of
appellate jurisdiction only, with such other jurisdiction
as then existed by law: *Id.*    The "other jurisdiction"
referred to is a kind of mythical entity, thus far not
very clearly identified by the courts.    It was held in
the case of *Miller* v. *Conlee,* 5 Sneed, 434, that the
Constitution of 1834 deprived the Supreme Court of

State *v.* Hall.

all original jurisdiction; and in *The State* v. *Bank of East Tennessee,* 5 Sneed, 473, that the legislature could confer no such jurisdiction upon it: 5 Sneed, 473; 2 Col., 565. It cannot entertain a bill of review, nor render judgment by motion in favor of a surety, nor award a *mandamus* to compel an inferior judge to hear a petition for *habeas corpus:* 9 Yer., 15; 1 Thomp. Cas., 61; 2 Yer., 499; 6 Col., 528. But it will issue an original process in aid of its appellate jurisdiction: *King* v. *Hampton,* 3 Hay., 59. As a *mandamus* to compel an inferior judge to sign a bill of exceptions: *State ex rel.* v. *Hall,* 3 Col., 255. The jurisdiction of this court, then, to award the writ of *mandamus* is merely auxiliary to its appellate power. This jurisdiction it possesses, not by virtue of any statute, but under the common law, as inherent and necessary to the exercise of its functions as a court of appellate jurisdiction. In the case of *King* v. *Hampton,* 3 Hay., 59, in which a petition was exhibited to this court for a *mandamus* to compel the Circuit Court to proceed to the trial of a cause which had been pending there under a continuance authorized by statute, the court refused the *mandamus.* The statute provides that if the United States Government did not, within two years, pay for arms impressed during the British war of 1812, the State would, and that all proceedings against officers for impressing arms should be stopped for those two years: Act 1815, ch. 38, secs. 3, 4. Here was a closing of the courts against the citizen, for which a remedy by *mandamus* was sought in this court. The *man-*

*damus* was refused, and in so adjudging the court said that it had no original jurisdiction, and that it could not take cognizance of any matter unless it related to an appeal prayed for and defeated, or attempted to be defeated in any way; in which case, this court would remedy the injury by any writ adequate to the purpose: 3 Hay., 59. It is true, that at common law the *mandamus* was, in the language of Sir William Blackstone, a writ of "most extensively remedial nature"—that it issues in all cases where the party hath a right to have anything done, and hath no other specific means of compelling its performance, and even in cases where the party hath another and more tedious method of redress: 2 Cooley Bl., 108. But these principles as to the remedial energies of the writ of *mandamus* can have no relevancy here, whatever they might have in an inferior forum, in which our statutes have reposed the general jurisdiction upon the subject. Here it is a question, not upon the flexibility of the remedy, but upon the jurisdiction of the forum in which it is sought. The case of the relator does not bring him within the principle that would authorize the court to award the writ. The application here is not in aid of the appellate jurisdiction of the court. This is not a case in which "an appeal was prayed for and defeated, or attempted to be defeated, in any way," and the jurisdiction, if assumed, would be essentially original and utterly incompatible with the well-defined jurisdiction of this court as an appellate tribunal. We hold that the writ of *mandamus* in this court is not a legitimate

remedy in this case, and if there were nothing else in the case this must be decisive of it.　But a question underlies all this which is one of much graver importance, which has been directly made and must be directly met.

It is argued with very great ability that the court or tribunal over which the defendant presided when this judgment was rendered, was no court at all, and that the defendant was not either *de jure* or *de facto* a Judge of the Circuit Court.　This is certainly so in the sense of that system of laws, organic and derivative, under which we now live, and under which we would have been living on the 10th of October, 1864, if that had been a season of profound peace instead of flagrant war.　But a state of war unsettles the foundations of the social fabric, and paralyzes the law, and the will of a conqueror becomes a law unto itself.　There can be no question, at this day, that the conquering power in the possession of the conquered territory has a right either to adopt the tribunals of justice already existing, or to abolish them and create others in their stead.　Thus, it is said, the laws, usages and municipal regulations in force at the time of the conquest, remain in force until changed by the new sovereign: *Calvin Case,* 7 Coke, 17; 9 Pet., 711.　There is no doubt of his power to change the laws of the conquered country, unless restrained by the capitulation or treaty.　In the case of a country acquired by conquest, said Chancellor Walworth, no formal act of legislation is necessary to change the law; the mere will of the conqueror is enough: 17

Wend., 587; 1 Kent's Commen., 181. We need not multiply authorities upon this familiar principle of the laws of war. It is a principle quite as old as the law of nations that the conquering power may create tribunals, to endure during the hostile occupation, to try civil and criminal causes, and to protect for the time the rights of life and property: Watt M., 782, 783. And these principles applied with peculiar force to the late civil war in this country. The theory was, that it was necessary that the State governments should be in active operation, in conformity with and subordinate to the Constitution of the United States, for the administration of the internal affairs of each State. Until this was so, the country held under the forcible or military government of the republic, as far as necessary, although that government is exercised by civil officers and civil methods: Wheat. Inter. Law, 85. And it makes no difference what these tribunals are called—whether circuit courts or civil commissions—so that they be constituted by competent military authority. This court has recently said that the civil commissions appointed by Andrew Johnson in West Tennessee for the trial of civil causes, under his commission from the President as commander-in-chief of the army, were, under the laws of war, valid organizations, and that these judgments could not be impeached on the ground that the military governor had no power to constitute them: *Wart* v. *Thompson,* MS., Jackson, 1872. Although this was said *arguendo,* and could not technically be considered as a binding authority, yet it was said upon due consideration in

State *v.* Hall.

a case involving a general review of the subject of military tribunals in a time of war. As unpalatable as such a doctrine must be in this country, where liberty regulated by law has been the rule, and arbitrary restraint the exception, yet, under the laws of war, we must accept it as true. Those tribunals have in divers ways been recognized by the court, and treated as lawfully constituted tribunals. And if for no other reason, this ought to be so upon consideration of public policy, and for the sake of public repose. We have had before us in this court many important causes where judges, having no other ensign of office than a commission of the military governor in time of war, rendered judgments which we have reversed or affirmed, duly recognizing these persons as *de facto* judges. Our immediate predecessor upon this bench set a commendable example in suffering many things done during the war, which were by them deemed unlawful, to remain in absolute repose because they were "accomplished facts." Following this example, and for the same reasons, among others herein stated, we cannot and will not disturb the public repose, unsettle titles, and bring our social fabric into chaos and confusion, by pronouncing as an unlawful usurpation the exercise of judicial functions which, under the laws of war, were lawful at the time.

Dismiss the petition.